JASON C. WILSON *against* GRANDISON D. ROYSTON.

ERROR *to Hempstead Circuit Court.*

In replevin, the plea of *non cepit* admits the property of the slaves or other property replevied, to be in the plaintiff, and that he was previously in possession.

The plea of *non cepit* puts in issue nothing but the caption ; and the place where that is material : and under it the defendant cannot show property out of the plaintiff.

And where *non cepit* is pleaded, together with a plea of property in a third person, and not in the plaintiff, the pleadings narrow the case to the taking of the goods, and whose property they were at the time of the caption.

A plaintiff, who has a general or special property of goods, coupled with possession, either actual or constructive, can maintain replevin : and it was error to instruct the jury that a plaintiff must have had actual possession to enable him to maintain replevin.

A deed of trust acknowledged before a Notary Public in Louisiana, and subscribed in the presence of two witnesses, whose names and attestations were affixed to it; authenticated by the Notary Public, with the certificate of the Governor of Louisiana annexed, showing that the Notary Public was duly commissioned and in office at the time; is not so authenticated as that it can be read in evidence in this State without other proof of its execution.

To prove the execution of a deed, the testimony of the subscribing witnesses cannot be dispensed with, unless it be first shown that they are dead or interested, or have become infamous ; or that their names are fictitious ; or unless a more diligent search be made for them, and they cannot be found or heard of; or they are out of reach of the process of the court.

When these facts are proved, the next best evidence is by proving the handwriting of attesting witnesses.

And if the hand writing of the witnesses cannot be proved, after proper diligence for that purpose, then the hand writing of the obligor may be proved, but not before.

The hand writing of the subscribing witnesses must be proved, even where they have become *incompetent* since their attestation.

Therefore, where the whole showing is, that the witnesses sworn in the trial, stated, "that they had no knowledge of the subscribing witnesses to the deed ; and that they had never known of their residing in this State ;" this showing does not warrant the admission of the deed by proof of the hand writing of the obligor.

This was an action of replevin, brought by *Wilson* against *Royston* for certain negroes. The defendant pleaded *non cepit*, and property in himself and not in the plaintiff, and also gave notice that he would prove property in himself and one Wynn. The plaintiff joined issue to the plea of *non cepit*, and demurred to the second plea, which demurrer was overruled, and, as stated by the record, he then "joined issue 2nd plea."

The record is a meagre one, and very little was done by the plaintiff, in the court below, to present his case fairly before this court.

Upon the trial the defendant offered in evidence a deed of trust from Wynn to himself, conveying the slaves in controversy, with others, to him in trust to secure the payment of certain debts, and authorizing him, upon Wynn's failure to pay any one of the debts when due, to take possession of and sell the negroes to pay such debts. The court refused to permit the deed to be read, as not being sufficiently authenticated, and the defendant then introduced two witnesses, who stated that they "had no knowledge of the subscribing witnesses to the deed, and had never known of their residing in this State." Upon this the court below permitted the hand writing of Wynn, the grantor, to be proved, and upon the proof thereof the deed was read to the jury.

Nothing more appears upon the record, in regard to the evidence in the case.

Instructions were asked on both sides, but it is not necessary to refer to all the instructions refused or given.

The court refused to instruct the jury, on motion of the plaintiff, that the plea of *non cepit* admitted the property and possession of the slaves to have been in the plaintiff—and instructed them, that if the defendant did not take the slaves out of the possession of the plaintiff, the jury must find for the defendant; that the plaintiff must have been in the *actual* and *lawful* possession of the slaves, to entitle him to recover; and that if they found for the defendant, they would find for him all the damages by him sustained from the date of the writ to the time of verdict.

The jury found the slaves to be the property of the defendant, and that he was entitled to the possession of them, and assessed the damages for loss of use of the slaves by the suing out of the writ to fifteen hundred dollars.

The plaintiff then moved for a new trial, and his motion was overruled.

PIKE, for plaintiff in error:

We contend, 1st. That the deed from Wynn to Royston was not sufficiently proved to admit it to go to as evidence to the jury.

In *Johnson vs. Mason*, 1 *Esp.*, 89, when a person who executed a

deed as attorney for another was asked in court if he executed the deed, and the question was objected to, until the deed was proved by the subscribing witness. Lord Kenyon sustained the objection, and said that Lord Mansfield had once by surprise, allowed a man to acknowledge his own deed in court, without calling the subscribing witness, but that he afterwards changed his opinion, and held that a party should not be allowed to acknowledge his own deed in court, until it had been proved by the subscribing witness.

So in *Abbott vs. Plumbe, Doug.* 216, Lord Mansfield said, " to be sure this is a captious objection; but it is a technical rule, that the subscribing witness must be produced." This rule was also recognized in *Barnes vs. Trompousky*, 7 *T. R.*, 261, by Lawrence J., and in the same case, Grose J., also said, "where there is a subscribing witness, the parties thereby agree that the proof of their hand-writing shall be made through that medium." The same rule was recognized in *Call vs. Dunning*, 4 *East.* 53; in *Leith vs. Post*, 1 *Esp.* 196; in *Cunliffe vs. Sefton*, 2 *East*, 183; in *Laing vs. Raine*, 2 *Bos. and Pul.* 85; and the Supreme Court of New-York, in *Sluby vs. Champlin*, 4 *J. R.* 461, and *Fox vs. Kiel*, 3 *J. R.* 477, has without qualification admitted it to be the law. *And see* 1 *Phil. Ev.* 412. And both these cases were subsequent to the case of *Hall vs. Phelps*, 2 *J. R.* 451, in which C. J. Spencer argued against the English rule, and decided that the execution of a note might be proved by the admission of the promisor. Chancellor Kent, in *Fox vs. Kiel*, 3 *J. R.* 477, refused to recognize the reasoning of C. J. Spencer, as applied to a deed or bond.

But admitting that a deed may, under certain circumstances, be proven by identifying the grantor's hand writing, do the authorities warrant that kind of proof, under such circumstances as are exhibited in this case? We think not.

The case of *Barnes vs. Trompousky* in *K. B.*, 7 *T. R.* 261, is very strongly in point. A charter party was offered in evidence, signed by the name of the defendant, and attested by one Knieviem, whose seal, as a sworn broker, was attached to the instrument. A merchant living in Hull, long conversant in the Russian trade, and in the habit of corresponding with the defendant, proved the signature to the char-

Wilson *against* Royston.

ter party to be his, and also proved that eight years before, a sworn broker named Knievicm was living at Riga, and that he had not heard of his death; and another witness proved that Knieviem was acting there as a broker seven years before; but neither of the witnesses knew his hand writing. Upon this state of case the charter party was read to the jury below, but in *K. B.* Lord Kenyon said, "We ought not to suffer this point to be called in question. It is too clear for discussion. I do not say that proof of the hand writing of the contracting party is not, under any circumstances, sufficient, when there is a subscribing witness, as if no intelligence can be obtained respecting the subscribing witness after reasonable inquiry has been made; but here the witness is a known person residing in Riga." And he further laid down the rule to be, that instruments of writing which are witnessed, must be proven "regularly, by the witness, if living; if dead, by proving his hand writing; if residing abroad, by sending out a commission to examine him, or at least, by proving his hand writing; which last, indeed, is a relaxation of the old rule, and admitted only of late years." "The same medium of proof has also been admitted, where the subscribing witness has been sought for, and could not be found, so as to furnish a presumption that he was dead. But the rule has never been relaxed further than these instances; and there is neither necessity nor convenience in doing so."

So in *Call vs. Dunning,* 4 *East.* 53, and *S. C.* in 5 *Esp.* 16, where the only proof offered of the execution of a bond, to which there was a subscribing witness, was the defendant's answer to a bill in chancery, in which he admitted the bond to be his deed, Lord Ellenborough said that "the case fell within the common rule; that the answer in chancery was only secondary evidence; and not admissible, because the plaintiff had not laid a foundation for letting it in, by shewing that he had made inquiry after the subscribing witness, and had not been able, with due diligence, to procure any account of him."

So in the present case, the only ground on which the handwriting of the grantor was allowed to be proved, was, that two witnesses testified that they did not know any such persons as the subscribing witnesses, nor that they resided in this State. How easy it would be to procure

Wilson *against* Royston.

such testimony as this, and how far it is from complying with the rule, the court cannot but see; and it does not even conduce to prove any diligence whatever on the part of the defendant in this case. He issued no subpœna for the subscribing witness, and asked no commission to take their testimony—but upon the meagre showing which he made, he proved the deed by the statement of a witness, that he "believed" the signature to be Wynn's—a kind of testimony always regarded with suspicion, and only allowed to be resorted to in extreme emergencies.

The whole law upon this subject is distinctly laid down in *McPherson vs. Rathbone*, 11 *Wend.* 98. There the court said that "where a sealed instrument is attested by a subscribing witness, the testimony of such witness is the best evidence of its execution. If the subscribing witness is not produced, his absence must be sufficiently accounted for; as that he is dead, or cannot be found on sufficient inquiry; or that he resides out of the State, and is beyond the reach of the process of the court. In such case, *proof* of the hand writing of the subscribing witness, proves the execution of the instrument." The court then goes on to say, that "*if the hand writing* of the subscribing witness cannot be proved, after proper diligence has been used for that purpose, the party must then resort to the same testimony as if there had been no subscribing witness;" and may then prove the hand writing of the obligor or grantor. That this is the correct doctrine there can be no doubt. In the present case, no attempt even, was made to prove the hand writing of the subscribing witnesses. Many cases will be found, where evidence of the hand writing of the witness has been received; but *no one case* will be found, in an English court, or any American one, so far as we have examined, where proof of the hand writing of the grantor or obligor has been received, *without an attempt* to prove the hand writing of the witness. See *Adams vs., Kerr,* 1 *Bos. and Pul.* 360; *Barnes vs. Trompousky,* 7 *T. R.* 262; *Mott vs. Doughty,* 1 *John's Cas.* 230; *Cunliffe vs. Sefton,* 2 *East.* 183; *Swire vs. Bell,* 5 *T. R.* 371; *Godfrey vs. Norris,* 1 *Str.* 34; *Wood vs. Drury* 1 *Ld. Raym.* 734; *Prince vs. Blackburn,* 2 *East.* 250; *Coghlan vs. Williamson, Doug.* 95; *Jones vs. Mason,* 2 *Str.* 833; *Goss vs. Tracy,* 1 *P. Wm's.* 289. These cases shew that the hand writing of the witness

may be proved, even where he himself has become an incompetent witness.

So in *Pelletreau vs. Jackson*, 11 *Wend.* 123, the cases are stated in which the execution of a deed may be proved, by proving the hand writing of the party, or his admission that he executed it. They are laid down to be, "where there is no witness—where the witness denies having any knowledge of the execution—where the name of the witness is fictitious—where he is interested or infamous—where he is dead or out of the jurisdiction of the court—*and after diligent inquiry no proof of his hand writing can be made*—or where, upon the like inquiry, nothing can be heard of him, so that he can neither be produced, nor his hand writing proved;" and it is declared that these qualifications of the general principle are in accordance with the general rule; that the best evidence must be produced, of which the nature and state of the case will admit. In that case, one witness stated that he had made faithful inquiries for the subscribing witness in New-York and Brooklyn; that he had made diligent search for her, and could not find her; that he had found one person who knew her, and had heard of others who had heard of her. Another witness stated that he had known the subscribing witness 24 or 25 years before, and had not heard of her since. Of this evidence, upon which the hand writing of the party was permitted in the court below to be proven, the Supreme Court of New-York said, after the remarks we have already quoted, that "sufficient diligence was shown in the inquiry after the subscribing witness, to let in the secondary evidence, that is, proof of her hand writing; but it fell short of what the court should have required, in order to justify an entire disregard of the fact, that there was a subscribing witness to the instrument, in the proof of the execution of it. The same diligence should be exacted in endeavoring to prove the hand writing, that is required in the endeavor to find and procure the personal attendance of the witness; at least, before the third degree of evidence is admitted, to wit; the hand writing of the party." And the court further said, that they would not presume that any attempt was made to prove the hand writing of the witness. *See also Jackson vs. Gager*, 5 *Cowen*, 383.

The case of *Pelletreau vs. Jackson* went up to the Court of Errors of

New-York, and was affirmed. *See Jackson vs. Waldron*, 13 *Wend.* 196. The opinion of Senator Tracy, in that case, which was sustained by the court, is conclusive; and this court is respectfully referred to it, as developing and successfully vindicating the rule, that proof of the hand writing of the witness, is higher in nature, and safer and more satisfactory, than the proof of the hand writing of the obligor or grantor; and that there must be as much proof of a *diligent and bona fide search* for proof of the hand writing of the witness, as for the witness himself; and further, that proof that the subscribing witness cannot be found is no proof that his hand writing cannot be proved.

2nd. We contend that there was no such issue on the second plea as would warrant a verdict; and that the verdict given assumes to respond to an issue which could not have been made in this case. The material fact in dispute, and substantial issue, raised on all pleas of property in replevin, is *property in the plaintiff*. The replication must take issue on that fact, and the rights of the parties must depend on the determination of it, the plea of *non cepit* being out of the question. And in every such plea of property, the defendant *must traverse* property in the plaintiff. The title to the property, stated in the plea, is matter of inducement. The traverse is indispensable. *Rogers vs. Arnold*, 12 *Wend.* 34; *Harris vs. Paynes*, 5 *Litt.* 10 7.

Where there is such a traverse, (and in this case there is an informal one,) the allegation of property in the defendant being the inducement, *issue cannot be taken* on that allegation. *Bemus vs. Beekman*, 3 *Wend.* 672; *Lady Chichesly vs. Thomson*, Cro. Cas. 104.

Where there is such a plea, containing a traverse, the plea concludes with a verification, as in this case; and in order to arrive at an issue, there must be a replication re-affirming property in the plaintiff, and on that the issue is made up; and the question is whether the property replevied was the property of the plaintiff. *Bemus vs. Beekman*, 3 *Wend.* 672; *Gould's Pl.* 376, 381, 382; *Bac. Abr. Pleas, &c. H.* 1.

The only issue, therefore, which could have been made upon the second plea in this case, was, whether the property was or was not the property of the plaintiff. The verdict is not responsive to this

issue; but finds another matter, which could only be indirectly involved in this issue.

Was any issue made up? It is laid down in *Morris vs. Barkley*, 1 *Litt.* 66, that a similar to the plea of the statute of limitations forms no issue. And see *Elliott vs. Fowler*, 1 *Litt.* 204; *Guthrie vs. Wickliffe*, 3 *Bibb* 81; and *Phillips vs. Tibbats*, 3 *Marsh.* 16.

3rd. We contend that the court below erred in refusing to instruct the jury, that the plea of *non cepit* admitted property and possession in the plaintiff; and instructing them that in order to enable the plaintiff to recover, he must have been in the *actual* and lawful possession of the property.

We shall find no difficulty in showing: First, that *non cepit* admits both property and possession; and second, that *actual* possession is not necessary to maintain replevin.

The whole law on the first point, will be found laid down in *Rogers vs. Arnold*, 12 *Wend.* 33. It is there stated that the plea of *non cepit* puts nothing in issue but the caption, except the place, when that is material, and that under it, the defendant connot show property out of the plaintiff.

This case is sustained by *McFarland vs. Barker*, 1 *Mass.* 152; and in *Seymore vs. Billings*, 12 *Wend.* 286, the rule is again stated to be, that the plea of *non cepit* involves merely the fact of *taking*, and the *place*, and not the title to the property.

So in *D'Wolf vs. Harris*, 4 *Mason* 528, where *non cepit* was pleaded, and for a second plea property in a third person and not in the plaintiff, and that the goods were attached by defendant, as the property of that third person; Story, J. said that ' "the pleadings narrow down the case to the taking of the goods, and whose property they were at the time of attachment."

So in *McKenley vs. McGregor*, 3 *Wharton* 393, the Supreme Court of Pennsylvania said, that by the plea of *non cepit*, the defendant disclaims property in the goods, and admits upon record, that property is in the plaintiff. By the plea of *non cepit*, they add, the caption and detention only are put in issue, and the right of property can only be put in issue by a special plea. See also, *Gilb.* on *Rep.* 165; *Wilkinson* on *Rep.* 50; *Harper vs. Barker*, 3 *Mon.* 421.

Wilson *against* Royston.

On the second point, that *actual* possession is not necessary to enable the plaintiff to maintain replevin, the authorities are perfectly unanimous and conclusive.

In *D'Wolf vs. Harris*, 4 *Mason* 529, Story J. lays the rule down to be, that property in the goods, together with an *actual* or *constructive* possession of them, is sufficient to maintain replevin, and decided, that an assignment of goods at sea, and their *proceeds*, if *bona fide*, is *sufficient* to pass the legal title to the goods, and also to the *proceeds* so that *replevin* will lie for the *latter*.

Since the case of *Pangburn vs. Patridge*, 7 *J. R.* 142, it has been settled that replevin will lie, where trespass *de bonis asportatis will lie*. The plaintiff must have property general or special, and possession either actual or constructive. And see *Ward vs. Macauley*, 4 *T. R.* 489; *Gorden vs. Harper*, 7 *T. R.* 9; *Putnam vs. Wyley* 8 *J. R.* 432. And the plaintiff having the property, has also the constructive possession, for the property draws to it the possession. *Marshall vs. Davis*, 1 *Wend.* 109; *Hall vs. Tuttle*, 2 *Wend.* 475; *Dunham vs. Wyckoff*, 3 *Wend.* 281; *Thompson vs. Button*, 14 *J. R.* 84; *Chinn vs. Russell*, 2 *Blackf.* 174.

So in *Wheeler vs. Train*, 3 *Pick.* 257, it is laid down that replevin and trover depend on the same principles, and that to maintain either, the plaintiff need only have the right of property, including the *right* of possession, at the time of taking, or at the time of suing out the writ. And see to same point, *Keeley vs. Hume* 3 *Mon.* 184.

4th. We contend that the court below improperly instructed the jury that they should assess for the defendant all damages sustained from the date of the writ to the time of the verdict. The damages could only have been assessed from the replevying the property till time of verdict.

TRIMBLE, and TRAPNALL & COCKE, *Contra:*

The second plea was good. See *Digest*, title *Replevin*, sec. 2; 12 *Wend.* 32; 10 *Wend.* 629.

The first question is, did the court rightly admit the deed of trust in the plaintiff's bill of exceptions, to go to the jury. The deed was first offered as an authenticated deed, but on that ground rejected, to

which the defendant excepted. This deed was then admitted as evidence, on proof of the hand writing of W. Wynn. If the deed was rightfully admitted to go to the jury it makes no difference on what ground it was admitted. This deed ought to have been admitted as evidence as an authenticated deed. See *Revised Statutes,* (*Authentication,*) *p.* 55, *sec.* 1; *same,* (*Conveyance of Real Estate,*) *p.* 190, *sec.* 14, *and* 16; *p.* 133, *sec.* 6.

The proof was sufficient to admit the deed, on the proof as taken in the record. 11 *Wend.* 123; *Digest, Conveyance sec.* 3; 1 *Starkie* 290, 1, 2, 3 *and* 4. The plea of *non cepit* is the general issue in replevin, and puts the plaintiff to the proof of the allegations in the declaration. *Bacon Abr. replevin, and Avowry,* (*J.*) This plea when pleaded alone admits property in the plaintiff, but does not admit possession in the plaintiff; when this plea is accompanied with the plea of property in defendant, it does not admit property or possession in plaintiff. *Comyns' Digest title Repl.* 917; 7 *J. R.* 140; 17 *J. R.* 116; 10 *Wend.* 629; 12 *Wend.* 32.

The first and second instructions asked by the defendant, are, that if the possession of the property was not in the plaintiff at the time of the supposed taking, he cannot have a verdict, that is, the jury ought to find for the defendant. The declaration is founded on a supposed taking from the plaintiff by the defendant, he must show that he had the possession, and that the defendant took the property from him, as in trespass *de bonis asportatis,* in conformity to the rule that the proof must conform to the allegations. See *Digest* 457. The possession must be in the plaintiff, and that possession must be lawful. See *Dig.* 457. "In all cases where any goods or chattels shall be taken from the possession of any person lawfully possessed thereof," &c. 7 *J. R.* 140; 17 *J. R.* 116; 10 *Wend.* 629; 12 *Wend.* 32.

The third instruction asked by defendant is supported by the second section of the act under which the action is brought. See *Dig.* 458.

The fourth instruction is that if the defendant had a general or a special property with a right to immediate possession, the jury ought to find for defendant. 2 *Stark. title replevin;* 12 *Wend.* 32.

Wilson *against* Royston.

The fifth instruction is that the right to present property draws to it the right of possession.

The sixth instruction is supported by the second section of the act concerning replevin. *Dig.* 458; *Rev. Stat., sec.* 43 and 44, *p.* 666.

The counsel for the defendant further suggest that the instructions are not incorporated in the bill of exceptions, or made a part of the record; nor is there any evidence that the deed of trust was all the evidence in favor of the defendant, and therefore the record does not show any error in the judgment of the court below. And the exception of the plaintiff to the judgment of the court, admitting the deed of trust to go to the jury, does not say that it contains all the testimony upon the subject, nor does it say that the defendant did not prove the hand writing of the subscribing witnesses, as well as the maker of the deed, (Wynn.) See *Nations vs. Gray,* 1 *Ark.* 557.

LACY, *Judge,* delivered the opinion of the court:

The first question presented is, whether the Circuit Court erred in refusing to instruct the jury, on the plaintiff's motion, that the defendant's plea of *non cepit* admitted the property and possession of the slaves in controversy, to be in the plaintiff at the time of the taking alleged in the declaration. The doctrine in regard to the law of replevin on the plea of *non cepit* is accurately laid down in the case of *Rogers vs. Arnold,* 12 *Wendell,* 33. It is there stated "that the plea of *non cepit* puts in issue nothing but the caption, and the place, where that is material, and that under it the defendant cannot show property out of the plaintiff." And in the case of *D'Wolf vs. Harris,* 4 *Mason,* 528; Justice Story has said, "where *non cepit* was pleaded, and property in a third person, and not in the plaintiff, that the pleadings narrow the case to the taking of the goods, and whose property they were at the time of the attachment." 7 *John. Rep.* 142, *Pangburn vs. Patridge.*

The plea of *non cepit* does, in effect, disclaim property and possession to be in the plaintiff. If this be correct, then the court below certainly erred in refusing to give the instructions asked for by the plaintiff. He may have wholly failed in his action on account of the misdirection given to the jury; at any rate, it is but reasonable to sup-

pose that his interest was severely prejudiced by it; for it was all important for him to show property and possession in himself; and as that fact was expressly admitted by the pleading, he could not be required to prove it.

The second point to be considered and decided, is, did the court below err in instructing the jury that in order to entitle the plaintiff to maintain replevin, it was necessary for him to prove an actual and lawful possession of the property claimed. It is true, that the plaintiff must show a general or special property in the goods to support his action, or recover in replevin, coupled with an actual or constructive possession of them at the time of suing out the writ. The right of property, by intendment or operation of law, carries with it the right of possession, either actual or constructive. Upon this principle, it has been held that the assignment of goods at sea, and of their proceeds, if *bona fide*, is sufficient to pass the legal title to the goods, and also to the proceeds, so that replevin will lie for the latter. The authorities are so full and conclusive on this point, that it is deemed unnecessary to say more on this branch of the subject, than barely to refer to some of the most prominent cases that have been decided. The principle is well settled that a plaintiff who has a general or special property in the goods, coupled with an actual or constructive possession, can maintain replevin. It is the unlawful taking or deprivation of the goods that constitutes the gist of the action; and this taking may be from him who is legally entitled to the property or proceeds of the goods, as well as from him who has the actual possession of them. This being the case, it necessarily follows, that the court below erred in instructing the jury that the plaintiff must have had the actual possession of the property in controversy, in order to enable him to maintain replevin.

The only remaining question to be decided is, did the Circuit Court err in permitting the deed of trust from *William Wynn* to *Grandison D. Royston* to be read as evidence on the trial, upon proof of the hand writing of the grantor, without properly accounting for the absence of the subscribing witnesses thereto, or without proving the hand writing of the attesting witnesses.

It is a universal rule of practice, without an exception, that the best evidence which the nature and state of the case will admit of, must

Wilson *against* Royston.

be produced. This rule is founded on the most obvious principles of necessity, and of public policy; and it cannot be departed from with-without manifest injustice, and producing the greatest confusion and uncertainty in all judicial proceedings. It lies at the very foundation of all correct reasoning and induction, and it constitutes the basis and ground work of the law of evidence. Primary evidence stands highest in the scale or grade of proof, because it approaches nearest to the truth of the fact sought to be proved; and for this reason is more conclusive in its results, and less liable to mistake or deception; and wherever the best evidence exists, or can be obtained, it must be resorted to as furnishing the only legitimate and the most unerring test of truth.

To admit secondary evidence, while a higher grade of testimony exists, or can be procured, is to violate a universal principle of the law of evidence, and to destroy at the same time the only fair and legitimate mode of reasoning upon all subjects. The party who seeks to prove a given fact, by inferior evidence, must first lay a just ground for its introduction, by showing that the superior evidence has been lost or destroyed, or that it is not within his power to obtain it, or that it is not within the reach of the process of the court.

For to allow a party the privilege of resorting to secondary evidence while primary testimony exists, or can be had, would be to enable him to commit a fraud, and to obscure and render doubtful the issue to be proved. By keeping in view these plain and obvious principles we shall find little or no difficulty in solving the questions now before us. The plaintiff objected to the deed of trust, in the first place, as inadmissible testimony, for the want of proper authentication. The court sustained the objection, and the defendant thereupon introduced two witnesses who stated, " they had no knowledge of the subscribing witnesses to the deed, and had never known of their residing in this State." The record shows that the deed was duly acknowledged before a Notary Public, in the city of New-Orleans, and that it was subscribed in the presence of two witnesses, whose names and attestations were affixed to it. Upon this state of the case, the court below permitted the hand writing of William Wynn, the grantor, to be

proved, and upon proof thereof, the deed was declared duly executed and allowed to be read as evidence to the jury.

The record shows that the defendant claimed title to the property in question under and by virtue of the deed of trust executed by Wynn to himself. It is acknowledged before a Notary Public with his authentication attached to it, to which is annexed a certificate of the Governor of Louisiana, showing that the Notary Public was duly commissioned and in office at the time he affixed his official signature to the instrument. See *Revised Statutes of the State of Arkansas*, 53.

This cannot be considered as a judicial record of another State, and it is certainly not entitled to be read as evidence in this State, simply on the authentication of a Notary Public of New Orleans. It must then be proved as other deeds of equal grade and dignity are required to be. The law places the subscribing witnesses around the transaction for the sole purpose of proving it, and their testimony cannot be dispensed with, unless it be first shown that they are dead, or interested, or have become infamous since the subscribing of it, or unless a most diligent search be made for them, and they cannot be found or heard of; or they are out of the reach of the process of the court. When these facts are proved, then the law dispenses with the best evidence that the case will admit of, and allows secondary evidence to be introduced, by proving the hand writing of the attesting witnesses. In such cases, proof of the hand writing of the witnesses proves the execution of the instrument. And if the hand writing of the witnesses cannot be proved, after proper diligence has been used for that purpose, the party may then resort to a third grade of evidence, and prove the hand writing of the obligor or grantor, as if there had been no subscribing witnesses. *Johnson vs. Mason,* 1 *Esp.* 89; *Abbot vs. Plumbe, Doug.* 216; *Barnes vs. Trompousky,* 7 *J. R.* 261; *Call vs. Dunning,* 4 *East.* 253; *Fox vs. Kiel,* 3 *J. R.* 477; *McPherson vs. Rathbone,* 11 *Wendell,* 98. The authorities show that the hand writing of the subscribing witnesses, even when they have become incompetent since their attestation, must be proved. And in *Patterson vs. Jackson,* 11 *Wendell,* 123, the cases are enumerated in which the execution of a deed may be proved by establishing the hand writing of a party, or by admitting that he executed it. They

Wilson *against* Royston.

consist of these: where a witness is interested, or infamous, where he denies having any knowledge of its execution, where the name is fictitious, where there is no witness, where he is dead or out of the jurisdiction of the court, and where, after diligent inquiry, no proof of his hand writing can be made, and when, upon inquiry, nothing can be heard of him, so that he can neither be produced, nor his hand writing proved."

This enumeration includes all the cases where the hand writing of the grantor is allowed to be proved. It certainly cannot be contended that the defendant has brought himself within the rules here laid down. The witnesses to the deed are not shown to be dead, infamous, or interested, to deny having a knowledge of its execution, or to be fictitious personages, or out of the reach of the process of the court, nor is it shown, that after diligent inquiry, the defendant is unable to make any proof of their hand writing, or that nothing has been heard of them; so that they can neither be produced, nor their hand writing proved.

No attempt was ever made to prove the hand writing of the attesting witnesses, nor was any search or inquiry instituted for that purpose. No effort whatever was made to procure their attendance, or to obtain their testimony. The witnesses who were examined on the trial, simply stated "that they had no knowledge of the subscribing witnesses to the deed; and that they had never known of their residing in this State." No question, so far as the record shows, was ever asked them in regard to their knowledge of their hand writing. In the absence, therefore of all those requisites, which are held to be indispensable for introducing a third grade or species of evidence, to introduce the deed; the court below unquestionably erred in permitting the deed to be established by proving the hand writing of the grantor.

It has been already shown that the court erred in refusing the instructions asked for by the plaintiff, and in giving those asked for by the defendant, and also, in overruling the plaintiff's objection to the proof of the execution of the deed of trust; and this being the case, the court should have awarded the plaintiff a new trial, which was refused. This being the case, the judgment of the court below must be reversed.